UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
TIERA PERRY,                                          :
                                                      :
                          Plaintiff,                  :          **REPORT AND**
                                                      :          **RECOMMENDATION**
              -against-                               :
                                                      :          1:20-CV-02180 (AMD)(PK)
HIGH LEVEL DEVELOPMENT                                :
CONTRACTING AND SECURITY LLC and                      :
SHELDON MIDDLETON,                                    :
                                                      :
                          Defendants.                 :
                                                      :
------------------------------------------------------------ X
**Peggy Kuo, United States Magistrate Judge:**

Tiera Perry ("Plaintiff") brought this action against High Level Development Contracting &

Security LLC ("High Level Development" or the "Corporate Defendant") and Sheldon Middleton

("Middleton" or the "Individual Defendant," collectively, the "Defendants") for violations of the Fair

Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  (*See* "Compl.," Dkt. 1.)[1]

Before the undersigned on referral from the Honorable Ann M. Donnelly for a report and

recommendation is Plaintiff's Motion for Default Judgment against Defendants.  ("Motion," Dkt. 28.)

For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted.

**BACKGROUND**

**I.    Factual History**

The following facts are taken from Plaintiff's Complaint ("Compl."), Plaintiff's Affidavit in

Support of the Motion (Affidavit of Tiera Perry ("Perry Aff."), Dkt. 28-1 at 1-5 (page numbers refer

to ECF pagination)), and the transcript of the inquest held on September 7, 2021 (Inquest Transcript

dated Sept. 7, 2021 ("Tr."), Dkt. 24).

---

[1] This action was brought originally as a proposed collective and class action, but Plaintiff has not brought an
action to certify a collective or class action.  (*See* Compl. ¶¶ 1-2.)

The Corporate Defendant "is in the business of staffing security guards at residential and commercial buildings throughout New York City and its surrounding area." (Perry Aff. ¶ 5.) Plaintiff worked as a security guard for the Corporate Defendant from about October 3, 2018 until about May 12, 2019, and, after a break, again from September 9, 2019 until about March 23, 2020 when she was terminated by Defendants.[2]  (Perry Aff. ¶ 3; Tr. 12:14-17, 14:15-21, 16:25-17:2.)

Plaintiff had a varied schedule throughout her employment, working an average of 50 hours per week and regularly working 10 hours or more in a day.  (Perry Aff. ¶ 11; Compl. ¶ 25.)  Plaintiff retained seven paystubs, covering 14 weeks of employment with the Defendants.  (Perry Aff. ¶ 12; Ex. 1 to Perry Aff. ("Paystubs"), Dkt. 28-1 at 7-20 (page numbers refer to ECF pagination).)

From October 3, 2018 to December 31, 2018, Plaintiff was paid at a rate of $13 per hour, and after January 1, 2019, she was paid $15 per hour.  (Perry Aff. ¶ 14.)  Although Plaintiff worked more than forty hours a week, she was paid the regular hourly rate instead of the overtime rate for those hours.  (*Id.* ¶ 15; Compl. ¶¶ 20-21.)

Plaintiff did not receive any written notice at the time she was hired or thereafter stating her rates of pay, work hours, or information about her employer.  (Perry Aff. ¶¶ 16-17.)  The wage statements that Plaintiff received with each paycheck failed to state her overtime rate of pay, the number of overtime hours worked, and the correct amount of wages she was owed.  (*Id.* ¶ 18; Compl. ¶ 77.)

Defendant Middleton is the owner of the Corporate Defendant and hired Plaintiff.  (Perry Aff. ¶ 4.)  Middleton was in charge, "told [Plaintiff] what to do, when to come to work and leave, and decided how much to pay [her]." (*Id.* ¶ 6.)  Middleton had the power to hire and fire Plaintiff, control her working conditions, set her schedule, and determine her pay.  (*Id.*)  When Plaintiff inquired about

---

[2] Although the Complaint alleges that Plaintiff stopped working in or about March 2019 and resumed working in or about November 2019 (Compl. ¶ 17), the undersigned accepts Plaintiff's testimony and affidavit as more reliable.

receiving her overtime wages whenever she worked over forty hours a week, Middleton told her that the Corporate Defendant "does not pay overtime." (*Id.* ¶ 19.)

Plaintiff spoke with her co-workers and learned that they also worked more than forty hours a week and did not receive proper overtime pay. (Compl. ¶ 26.) On February 20, 2020, Plaintiff's counsel sent the Corporate Defendant a letter, informing it that Plaintiff would be initiating a lawsuit against it, offering to settle the matter without the need for a suit, and stating that federal and state laws prohibited retaliation against Plaintiff. (Perry Aff. ¶ 21; Ex. H to Motion ("Demand Letter"), Dkt. 28-11.)

On or about March 23, 2020, Defendants terminated Plaintiff's employment. (Perry Aff. ¶ 21.) Plaintiff was never told why she was fired, and she never received any letter. (Tr. at 19:6-8.) Plaintiff made numerous requests to be assigned work shifts, but Defendants did not provide her any work. (Tr. at 19:9-13.) She called Defendants to see if they had work for her, but they never returned her calls. (Tr. at 19:11-13.) Defendants continued to operate and did not shut down due to COVID-19. (*Id.* at 18:24-19:3.) Plaintiff always performed her work in a satisfactory manner, and there was no basis for her termination. (Compl. ¶¶ 36-37.)

Although Plaintiff attempted to find new employment, she has remained unemployed. (Tr. at 15:17-19, 21:17-22:21, 23:19-24:3.) Her termination has "put [her] in a lot of distress," especially given the onset of the COVID-19 pandemic at about that time. (*Id.* at 15:20-16:1.)

## II.    Procedural History

Plaintiff filed the Complaint on May 13, 2020, asserting violations of the FLSA and NYLL's overtime compensation provisions and NYLL overtime provision (Claims 1 and 2 [3] (Compl. ¶¶ 59-68); violation of the NYLL's annual notice requirement (Claim 3) (*Id.* ¶¶ 69-74); violations of the

_____

[3] Plaintiff has withdrawn her request for spread of hour damages. (Dkt. 25.)

NYLL wage statement requirements (Claim 4) (*Id.* ¶¶ 75-80); and retaliation under the FLSA and NYLL (*Id.* ¶¶ 81-86) (Claims 5 and 6).

Plaintiff served the Corporate Defendant on June 16, 2020 and Defendant Middleton on July 15, 2020. (Dkts. 8, 9.) After Defendants did not answer or otherwise respond to the Complaint, Plaintiff requested a certificate of default, and the Clerk entered default against Defendants on October 1, 2020. (Dkt. 11.)

Plaintiff initially filed a motion for default judgment against Defendants on November 16, 2020. ("First Motion," Dkt. 13.) The Court held an inquest on September 7, 2021, at which Plaintiff testified. (Minute Entry dated Sept. 7, 2021.) Although Defendants were notified of the proceeding on August 25, 2021 (Minute Order dated Aug. 25, 2021), they did not appear. Plaintiff filed updated damages requests and calculations on September 13, 2021. (Dkt. 25.)

On September 22, 2021, the Court granted Plaintiff's request to withdraw the First Motion, with leave to file a renewed motion. (Minute Order dated Sept. 22, 2021.) On September 27, 2021, Plaintiff filed the Motion.

## DISCUSSION

### I.    Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501

4

(2006). The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation marks and citation omitted). The plaintiff must establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

In the context of a motion for default judgment on FLSA and NYLL claims, "the plaintiff's recollection and estimates of hours worked are presumed to be correct." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) ("[I]n the absence of rebuttal by defendants, or where the employer has defaulted, as here, the employee's recollection and estimates of hours worked are presumed to be correct." (quotations, citations, and alterations omitted)).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria*

*El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II.      Jurisdiction

### A.  Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

### B.  Service on the Defendants

Plaintiff properly served the Corporate Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State.  *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).  (Dkts. 9, 21.)  Plaintiff properly served the Individual Defendant by delivering a copy of the Summons and Complaint to a person of suitable age and discretion at his residence.  Fed R. Civ. P. 4(e)(2)(B).[4]  (Dkts. 8, 21.)

### C.  Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  *Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).)

New York state has general jurisdiction over corporations formed under its laws and operating within the state.  *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).  High Level

---

[4] The address listed on the summons for the Individual Defendant is the same as that for the Corporate Defendant, but Middleton was not served at that address.  (Dkts. 4, 8, 9.)  In response to a Court Order for an explanation (Minute Order dated Aug. 2, 2021), Plaintiff's counsel filed a declaration stating that the address where Middleton was served is the most current address found as a result of a "skip trace."  (Dkt. 21 at 3.)  Plaintiff's counsel explained that the address for the Corporate Defendant listed through the New York Department of Records is non-existent, and a search through LexisNexis showed the same address with a different apartment number, but the process server was not able to gain entry to the building.  (*Id.* at 2.)

Development is a New York corporation operating within New York and was properly served with the Summons and Complaint. Therefore, the Court has personal jurisdiction over it.

New York has general jurisdiction over its residents. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). Middleton's last known residence is located in New York. (*See* Dkt. 21 at 3.) New York also has specific jurisdiction over individuals who "'transact[] any business within the state' so long as 'the cause of action arises from that transaction.'" *Francis*, 2018 WL 4292171 at *3 (quoting *Licci ex rel. Licci*, 673 F.3d at 60). Middleton is the "owner, shareholder, director, supervisor, managing agent, and/or proprietor" of High Level Development, which transacts business in New York. (Compl. ¶ 9.) The Court therefore has personal jurisdiction over Middleton.

## III.        Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiff has demonstrated that she has taken the required procedural steps to provide proper notice to the defaulting Defendants. Along with her Motion, Plaintiff included a notice of motion (Dkt. 28), Local Civ. R. 7.1(a)(1); a Memorandum of Law in Support of Plaintiff's Motion for Default Judgment ("Mem. of Law," Dkt. 28-2 at 17-18), Local Civ. R. 7.1(a)(2)); a copy of the Clerk's certificate of default (Dkt. 28-8), Local Civ. R. 55.2(b)(1); a copy of the claim (Dkt. 28-3), Local Civ. R. 55.2(b)(2); proof of service of the claim (Dkts. 8, 9), Local Civ. R. 55.1(b)(3); and proof of mailing the Motion to Defendants (Dkt. 30), Local Civ. R. 55.2(c). Although Plaintiff did not include a proposed judgment pursuant to Local Civ. R. 55.2(b)(3)), the Notice of Motion and memorandum of law make clear the relief she is seeking. (*See* Notice of Motion at 1-2 (page numbers refer to ECF pagination); Mem. of Law at 5-6.) The undersigned finds that Plaintiff has complied with the procedural requirements for a default judgment.

## IV.        Liability

### A.  Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  "When a defendant defaults, the violation is considered 'willful' and the three year statute of limitations applies." *Rodriguez v. Queens Convenience Deli Corp.*, No. 9-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing *Blue v. Finest Guard Servs., Inc.*, No. 9-CV-133 (ARR), 2010 WL 2927398 (E.D.N.Y. June 24, 2010)).  "The statute of limitations starts to run when the employee begins to work for the employer." *Id.*  The NYLL's statute of limitations is six years. NYLL § 198(3).

Plaintiff commenced this action on May 13, 2020.  (Compl.)  Because Defendants defaulted, the three-year statute of limitations applies to Plaintiff's FLSA claims, and she may recover under the FLSA for any claims that accrued starting on May 13, 2017.  Plaintiff began working for Defendants on or about October 3, 2018; therefore, the entire time of her employment falls within the statute of limitations for both the FLSA and NYLL.

### B.  Employment Relationship under the FLSA

The FLSA is to be "construed [ ] liberally" because its "broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation and citations omitted).  To plead a cause of action under the FLSA, a plaintiff must establish that: (1) defendants are employers subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Rowe v. CC Rest. & Bakery, Inc.,* No. 17-cv-01423 (CBA)(PK), 2019 WL 4395158, at *4 (E.D.N.Y. Aug. 15, 2019), *R&R adopted*, 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019).  Courts in the Second

Circuit have "treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

### 1. <u>Whether Defendants are Employers</u>

Plaintiff argues that both Defendants are employers within the meaning of the FLSA. The Complaint alleges that High Level Development "is an employer pursuant to the FLSA." (Compl. ¶ 11.) The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013). In order for a defendant to be considered an employer under the FLSA, a plaintiff must meet the criteria for either enterprise or individual coverage. *See Rowe*, 2019 WL 4395158, at *4.

The undersigned considers separately whether High Level Development and Middleton are employers. *See Loo v. I.M.E. Rest., Inc.*, No. 17-CV-02558 (ARR)(RER), 2018 WL 4119234, at *4 (E.D.N.Y. Aug. 29, 2018) ("A single employee can have multiple employers under the FLSA, and an employer can be held liable even if he was not personally complicit in FLSA violations." (quotation and citation omitted)).

### a. *High Level Development*

A defendant is an employer under the FLSA if it meets the criteria for either individual or enterprise coverage. *See Rowe*, 2019 WL 4395158, at *4. The individual coverage test considers the "employment actions" of the plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Id.* "[U]nder an individual theory of coverage, the test ... is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it.'" *Boekemeier v. Fourth Universalist Society in City of New York*, 86 F.Supp.2d 280, 287 (S.D.N.Y.2000) (citation omitted).

The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and ... whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015). "Commerce" is "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Even local activities may meet this test if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (*quoting Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiff alleges that High Level Development has "achieve[d] an annual gross business volume of $500,000 or more." (Perry Aff. ¶¶ 8–9.) She also alleges that High Level Development provided all security guards, including Plaintiff, "with uniforms and radios to wear while performing duties regardless of the job site." (*Id.*) Plaintiff does not specifically allege that the uniforms and radios used by Defendants' employees were moved in or produced for interstate commerce. However, courts have found it "logical to infer" that objects such as janitorial and cleaning supplies have moved in interstate commerce. *Rodriguez*, 784 F. Supp. 2d at 121; *see also Archie*, 997 F. Supp. at 530-531 (concluding that some items used by sanitation workers, such as radios and flashlights "undoubtedly moved in interstate commerce to New York City," and outreach participants used supplies such as uniforms, "some of which must also [have] moved in interstate commerce"); *Shim v. Millennium Group*, No. 08–CV–4022, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 28, 2009) (presuming that employees handled goods or materials moved in interstate commerce because "it is simply inconceivable that

none of the medical, custodial or office supplies used at the [employment location] originated outside of New York").

Because Plaintiff alleges that she and other employees used uniforms and radios provided by Defendants as part of their employment, and those materials undoubtedly moved in interstate commerce, Plaintiff has shown that Defendants meet the enterprise coverage test. *See e.g., Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (JG)(SMG), 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) (enterprise coverage test met where security guard plaintiff alleged that employees handled materials that had moved in interstate commerce, "such as uniforms, walkie-talkies, and flashlights").

### b. *Middleton*

"The underlying inquiry in determining 'employer' status is whether the individual possessed operational control over employees ...." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam). "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry*, 722 F.3d at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. The analysis of whether an individual is an "employer" is also guided by the factors the Second Circuit set forth in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984). *Irizarry*, 722 F.3d at 110. These factors are "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

The FLSA "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections

11

of the FLSA, since such limitations on control 'do not diminish the significance of its existence.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir. 1982)) (alteration omitted).

Plaintiff alleges Middleton was the owner of High Level Development.  (Perry Aff. ¶ 4.) Additionally, Middleton "was in charge and told [Plaintiff] what to do, when to come to work and leave, and decided how much to pay [her]."  (*Id.* ¶ 6.)  Middleton had the power to hire Plaintiff, fire her, control her working conditions, set her schedule and determine her pay.  (*Id.*)

Accordingly, the undersigned finds that Middleton was Plaintiff's employer.

## 2.  **Whether Plaintiff is an Employee**

The FLSA defines an "employee" as "any individual employed by an employer."  29 U.S.C. § 203(e)(1).  Defendants employed Plaintiff to work as a security guard, "patrolling property, monitoring surveillance equipment, and inspecting buildings, equipment, and access points."  (Perry Aff. ¶¶ 3-10.) Plaintiff is therefore an employee under the FLSA.

## 3.  **Whether the Employment Relationship is Exempted from the FLSA**

"Section 13 of the FLSA contains a litany of exemptions to the minimum wage requirement." *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014); *see also* 29 U.S.C. § 213(a)(3); 29 U.S.C. § 213(a)(1).  An employee's "exempt status depends less on his title, and more on the actual duties performed."  *McBeth v. Gabrielli Trucks Sales, Ltd.*, 768 F. Supp. 2d 383, 387 (E.D.N.Y. 2010).

Plaintiff was employed as a security guard.  (Perry Aff. ¶ 3.)  Such employment is not exempt from the FLSA's coverage.  *See Denoyer v. PMI Sec. Prot. Inc.*, No. 15-CV-4834 (KMK)(JCM), 2018 WL 1738217, at *2 (S.D.N.Y. Jan. 23, 2018), *R&R adopted*, No. 15-CV-4834 (KMK)(JCM), 2018 WL 1737154 (S.D.N.Y. Apr. 9, 2018) (stating that a plaintiff hired by a defendant to work as a security guard was not exempt under the FLSA).

### C.  Employment Relationship under the NYLL

To prevail on a NYLL claim, Plaintiff must establish that her employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment."  NYLL § 190.  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  *Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014). Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Because the NYLL's definition of "employer" is coextensive with the FLSA's definition, *Fermin*, 93 F. Supp. 3d at 37, Defendants are Plaintiff's employers within the meaning of the NYLL, and the NYLL applies to the instant dispute.

### D.  Overtime Claims

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* NYLL §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.2).

To support "a reasonable inference" that she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work,

*Nakahata*, 723 F.3d at 201. *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiff worked an average of 50 hours per week, which exceeds the hours per week necessary to assert an overtime claim. (Perry Aff. ¶ 11.) However, she was not paid at an overtime rate of one-and-a-half times her regular rate of pay; rather, she was paid a flat rate, regardless of the number of hours worked. (Compl. ¶ 21; Perry Aff. ¶ 15.) When Plaintiff asked Defendant Middleton about receiving overtime wages, Middleton responded that "his company 'does not pay overtime.'" (Perry Aff. ¶ 19.)

These allegations are sufficient to establish Defendants' liability for failure to pay overtime under both the FLSA and the NYLL. *See Newman v. W. Bar & Lounge, Inc.*, No. 20-CV-1141 (KAM)(RER), 2021 WL 2401176, at *7 (E.D.N.Y. June 11, 2021) (plaintiff's sworn statement estimating his schedule and pay established that he worked over 40 hours a week without time-and-a-half compensation, subjecting defendants to liability under FLSA and NYLL).

### E.  Wage Statement and Wage Notice Claims

Plaintiff alleged violations of NYLL §§ 195(1) and 195(3), the statute's wage notice and statement provisions. (Compl. ¶¶ 71–73; Perry Aff. ¶¶ 24–26.)

Section 195(1)(a) requires employers to provide employees at the time of hire with a wage notice containing, *inter alia*, the rate of pay, the basis thereof, and the pay schedule.

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.

Plaintiff did not receive any written wage notice containing the information required under Section 195(1)(a). (Compl. ¶ 30; Perry Aff. ¶¶ 16–17.) Although she received written wage statements,

these statements failed to state her overtime rate of pay and number of overtime hours worked. (Compl. ¶ 29; Perry Aff. ¶ 18.)  Accordingly, the undersigned finds that Defendants have violated NYLL §§ 195(1) and 195(3).

### F.  Retaliation Claims

Plaintiff alleges that she was terminated in retaliation for having her lawyer send the Demand Letter complaining that she had not received overtime pay under the FLSA and NYLL.  (Compl.  ¶¶ 34-35; Perry Aff. ¶ 21; Demand Letter.)

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]."  29 U.S.C.S. § 215(a)(3).

Under the NYLL, an employer may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint. . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter . . ."  NYLL § 215(1)(a).  Furthermore, under NYLL §215(1)(a)(iii), no employer "shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee…because such employee has caused to be instituted or is about to institute a proceeding under or related to this chapter."[5]

Because the FLSA and NYLL retaliation provisions are "'nearly identical'," claims under both statutes are analyzed using the same framework.  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 471 n.18 (S.D.N.Y. 2008) (internal quotations omitted); *see also Lopez v. Advantage Plumbing & Mechanical Corp.*, No. 15-CV-4507 (AJN), 2016 WL 1268274, *1 (S.D.N.Y. Mar. 31, 2016).

In order to establish a *prima facie* case of retaliation under the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an

---

[5] Plaintiff erroneously cites § 215(a)(3).  (*See* Memo of Law at 15.)

employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

The Second Circuit has held that the FLSA does not require that a plaintiff file a lawsuit or submit a complaint to a government agency in order to engage in protected activity. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 113 (2d Cir. 2015). It is sufficient that an employee make a complaint – even an oral one – to her employer in order to be protected by Section 215(a)(3) from retaliation, as long as the complaint is "'sufficiently clear and detailed for a reasonable employer to understand it… as an assertion of rights protected by the statute and a call for their protection.'" *Id.* at 117 (*quoting Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011).) Thus, although Plaintiff had not yet filed an FLSA lawsuit when she was terminated, she had directly asked Defendant Middleton about not receiving overtime pay, and he told her the company "'does not pay overtime.'" (Perry Aff. ¶ 19.) This complaint was followed by the Demand Letter through counsel notifying High Level Development that Plaintiff was making a claim against it for failing to pay her overtime wages. (*Id.* ¶ 21.) Both the complaint to Middleton and the Demand Letter to High Level Development were made "in a context that makes the assertion of rights plain." *Greathouse*, 784 F.3d at 115. (*See* Perry Aff. ¶¶ 18–21; Demand Letter.) Moreover, NYLL explicitly prohibits retaliation where an employee "has made a complaint," NYLL § 215(1)(a), or "is about to institute a proceeding" under the statute. NYLL §215(1)(a)(iii). Therefore, Plaintiff engaged in protected activity.

Termination is undoubtedly an adverse employment action. The Second Circuit has defined an adverse employment action as "a materially adverse change in the terms and conditions of employment such as termination…." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (emphasis and citations omitted). *See e.g.*, *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008) (stating that termination in retaliation for pursuing a claim would result in an FLSA

16

violation). The NYLL explicitly prohibits the "discharge" of an employee in retaliation. NYLL §
215(1)(a). Thus, Defendant's termination of Plaintiff's employment on or about March 23, 2020
constituted an adverse employment action. (Perry Aff. ¶ 21.)

Finally, there must be a causal relationship between the protected activity by Plaintiff and the
adverse employment action. "[T]he causal connection may be established by (1) 'evidence of
retaliatory animus directed against a plaintiff by the defendant'; or (2) a close temporal proximity
between the protected activity and the adverse employment action." *Torres*, 628 F. Supp. 2d at 473
(quoting *DeCintio v. Westchester County Medical Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). "[C]ourts have
recognized that proof of causal connection can be established indirectly by showing that protected
activity is followed by discriminatory treatment." *Grant*, 622 F.2d at 46.

Defendant's termination of Plaintiff's employment occurred approximately one month after
her counsel sent the Demand Letter on or about February 20, 2020. (Perry Aff. ¶ 21.) *See Torres*, 628
F. Supp. 2d at 474 ("Causation can be inferred here because the 28 days between the protected activity
and an adverse employment action is 'very close.'" (quoting *Clark County School District v. Breeden*, 532
U.S. 268, 273-74 (2001).); *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)
("We are particularly confident that five months is not too long to support such an allegation [of
retaliation] where plaintiffs have provided evidence of exercises of free speech and subsequent
retaliatory action….") The temporal proximity between the protected activity and the adverse
employment action establishes a causal connection between those acts. *Lopez*, 2016 WL 1268274 at
*3.

Because Plaintiff has shown all three elements, she has established a prima facie case of
retaliation under the FLSA and NYLL. Defendant has defaulted and, therefore, has not rebutted
Plaintiff's prima facie case. Accordingly, Plaintiff has successfully established a claim of retaliation
under the FLSA and NYLL.

## V.      Damages

### A.  Overtime

#### 1.  Overtime Pay

Plaintiff was entitled to overtime pay for all hours worked over 40 at 1.5 times her regular hourly wage from October 3, 2018 to March 23, 2020.

Plaintiff recalled that she worked an average of 50 hours each week, as reflected in the seven paystubs that she kept from working for Defendants.  (Perry Aff. ¶¶ 11, 12; Tr. at 17:16-18:2.)  The paystubs show that her hours during these two-week pay periods varied from 87.5 hours to 125 hours, averaging 49.5 hours per week.  (*See* Paystubs.)  For ease of calculation, the undersigned uses 50 as the average number of hours Plaintiff worked each week.

Plaintiff was paid at her regular hourly rate for all hours worked each week.  Therefore, her overtime damages can be calculated by multiplying the number of overtime hours she worked each week multiplied by the overtime premium she was owed.  The following table sets forth those calculations:

| Time Period | Hours Per Week | Weeks | Hourly Rate | Overtime Hours Per Week | Overtime Premium | Weekly Overtime Underpayment | Total Overtime Underpayment |
|---|---|---|---|---|---|---|---|
| Oct. 3, 2018 – Dec. 31, 2018 | 50 | 13 | $13.00 | 10 | 6.50 | $65.00 | $845.00 |
| Jan. 1, 2019 – May 6, 2019 | 50 | 18 | $15.00 | 10 | 7.50 | $75.00 | $1,350.00 |
| May 7, 2019 – May 11, 2019 | Plaintiff does not seek overtime damages for this five-day period | | | | | | |
| May 12, 2019 - Sept. 9, 2019 | Plaintiff took a break and did not work during this period | | | | | | |
| Sept. 10, 2019 - March 23, 2020 | 50 | 28 | $15.00 | 10 | 7.50 | $75.00 | $2,100.00 |

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$4,295.00** in unpaid overtime.

### 2. Liquidated Damages

Under both the FLSA and NYLL, an employee may recover liquidated damages equal to the amount owed for unpaid overtime compensation, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law. 29 U.S.C. §§ 216(b), 260; NYLL § 198(1-a). Because Defendants did not respond to the Motion, there is no showing of good faith, and liquidated damages are appropriate. *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR)(MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$4,295.00** in liquidated damages under the NYLL and FLSA.

### B. Wage Notice and Wage Statement Damages

Plaintiff seeks damages for Defendants' violations of NYLL §§ 195(1) and 195(3). Violations of NYLL § 195(1) carry damages of $50 per workday, for a maximum of $5,000, along with costs and attorney's fees. NYLL § 198(1-b). Violations of NYLL § 195(3) carry damages of $250 per workday, for a maximum of $5,000, along with costs and attorney's fees. NYLL § 198(1-d).

Because Plaintiff never received a wage notice and she worked for Defendants for more than 100 days, she is entitled to the maximum amount of damages authorized under NYLL § 195(1) of $5,000. Plaintiff also did not receive wage statements from Defendants that contained accurate overtime information pursuant to NYLL § 195(3) for more than 20 days. Therefore, she is entitled to the maximum damages under that provision as well. *See e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO), 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019) (awarding $5,000 under Section 195(3) of the NYLL because the plaintiff worked without receiving paystubs for more than 20 days).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $5,000 in damages under NYLL § 195(1) and $5,000 in damages under NYLL § 195(3).

## C. Retaliation Claims Damages

As damages for Defendants' retaliation against her, Plaintiff seeks $63,525.00 in back pay under the FLSA and NYLL, $63,525.00 in liquidated damages under the FLSA, and $5,000.00 in emotional distress damages under the FLSA and NYLL. (Mem. of Law at 17–18.)

### 1. Backpay

Plaintiff seeks back pay due to retaliation under the FLSA and NYLL from the date of her last day of employment through the date that judgment is entered. (Mem. of Law at 16.) Under NYLL §215(2)(a), an employee may recover an award of "lost compensation" if the employer has engaged in retaliatory conduct. The FLSA also explicitly permits the recovery of back pay by including "payment of wages lost" as a possible remedy for retaliation. 29 U.S.C. §216(b).

To calculate lost wages, Plaintiff multiplied the average weekly wage of $825[6] by the number of weeks that she is owed wages. As of September 13, 2021, Plaintiff was owed 77 weeks of lost wages, which totals **$63,525.00** ($825 weekly wage × 77 weeks = $63,525). She is also entitled to $825.00 per week until the date of entry of judgment. *See Belizaire v. RAV Investigative and Sec. Services Ltd.,* 61 F. Supp. 3d 336, 362 (E.D.N.Y. 2014) ("In the inquest context, courts in this jurisdiction generally award back pay through the date of default judgment.")

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded backpay of $63,525.00, plus $825 per week from September 14, 2021 until the date of entry of judgment.

---

[6] ($15 minimum wage hourly rate x 40 hour work week) +($22.50 overtime hourly rate x 10 hours of overtime per week) = $825 weekly wage for a 50 hour work week.

### 2. Liquidated Damages

Plaintiff seeks liquidated damages for retaliation under the FLSA in the amount of $63,525.00. (Mem. of Law at 16.)

In addition to back pay, the FLSA also permits the Court to impose the payment of "an additional equal amount as liquidated damages." 29 U.S.C. §216(b). *See Greathouse v. JHS Sec. Inc.*, No. 11-CV-7845 (PAE)(GWG), 2015 WL 7142850, at *3-4 (S.D.N.Y. Nov. 13, 2015), *R&R adopted*, 2016 WL 4523855 (S.D.N.Y. Aug. 29, 2016). "A court may, however, reduce or eliminate the liquidated damages award if the employer shows its actions were in good faith and that it had reasonable grounds to believe its act or omission was not a violation of the FLSA." *Greathouse v. JHS Sec. Inc.*, No. 11-CV-7845 (PAE)(GWG), 2016 WL 4523855, at * 4 (S.D.N.Y. Aug. 29, 2016). *See* 29 U.S.C. §260.

Generally, a plaintiff who has been unlawfully terminated must mitigate the degree of harm suffered. *Greathouse*, 2015 WL 7142850, at *3-4. Plaintiff testified that in April 2020, about a week after her termination, she began applying for other jobs and also returned to her previous worksite to try to get her job back. (Tr. 22:15-21, 23:4-13.) She continued to look for other jobs she was qualified for, but was unsuccessful and, as of September 27, 2021, she remained unemployed. (Tr. 23:22-24:3; Perry Aff. ¶ 29.)

Defendant has defaulted and thus failed to present any evidence of good faith or to demonstrate that Plaintiff did not mitigate her damages. *See Greathouse*, 2015 WL 7142850, at *3-4. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded liquidated damages for retaliation under the FLSA in the amount of **$63,525.00**, which is equal to the amount of her back pay.[7]

---

[7] Plaintiff states that she "is not seeking liquidated damages for unlawful retaliation under the NYLL." (Mem. of Law at 16.) However, the NYLL makes an award of liquidated damages up to $20,000 mandatory. NYLL §215(2)(a) ("Liquidated damages shall be calculated as an amount not more than twenty thousand dollars. The court shall award liquidated damages to every employee aggrieved under this section, in addition to any other

### 3. Emotional Distress

Plaintiff seeks $5,000 in emotional distress damages for retaliation under the FLSA and NYLL. *See Greathouse*, 2015 WL 7142850, at *3-4.

Although the Second Circuit has not explicitly ruled on this issue, several courts have found that emotional distress damages are available under the anti-retaliation provision of the FLSA "in light of the FLSA's evident purpose to fully compensate victims of retaliation." Greathouse, 2015 WL 7142850, at *3 (collecting cases). The undersigned respectfully recommends that emotional distress damages be awarded here.

Plaintiff alleges that Defendants' unlawful retaliation has caused her to suffer "severe mental anguish and emotional distress." (Dkt. 25 at 3; Tr. 15:20-16:1; Perry Aff. ¶ 30.) Her request for $5,000 in emotional distress damages is appropriate in light of what appears to be a claim on the "lower end of the so-called 'garden variety'" form of emotional distress. *Francis*, 2018 WL 4292171 at *10 (finding that courts in this Circuit have typically awarded damages ranging from $5,000-$30,000 for garden-variety claims). *See also Greathouse*, 2015 WL 7142850, at *4 (awarding $10,000 in emotional distress damages where employer retaliated by threatening plaintiff with a gun).

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$5,000** in emotional distress damages.

### D. Prejudgment Interest

Plaintiff seeks prejudgment interest under the NYLL. (Mem. of Law at 12-13.) Prejudgment interest is available for underpayments under NYLL, *see* NYLL § 198(1-a), but not for wage statement

---

remedies permitted by this section.") *See Demirovic v. Ortega*, No. 15-CV-327 (CLP), 2018 WL 1935981, at *8 (E.D.N.Y. Apr. 24, 2018), aff'd, 771 F. App'x 111 (2d Cir. 2019) ("In light of the jury's finding [of liability for retaliation], the Court is required to award liquidated damages to each of the plaintiffs"). The undersigned finds it unnecessary to decide whether Plaintiff may waive her right to recover liquidated damages for retaliation under the NYLL, since the amount of liquidated damages being recommended under the FLSA here exceeds the statutory limit imposed by the NYLL.

or notice violations, or for liquidated damages. *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020). A plaintiff may seek prejudgment interest on any underpayment, in addition to liquidated damages. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) ("Pre-judgment interest and liquidated damages under the Labor Law are not functional equivalents").

In New York, prejudgment interest accrues at the statutory rate of nine percent per year. N.Y. C.P.L.R. § 5004. "Where [ ] damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Id.* § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." *Perez Campos*, 2018 WL 9945754, at *8 (citing *Fermin*, 93 F.Supp.3d at 49). Other courts have used the midpoint between the first and last dates of the plaintiff's NYLL claims. *See e.g., Hernandez v. NJK Contractors, Inc.*, 09-CV-4812 (RER), 2015 WL 1966355, at *51 (E.D.N.Y. May 1, 2015).

Plaintiff specifies June 29, 2019 as the date from which to calculate pre-judgment interest, because it is "the midpoint of the employment." (Mem. of Law at 13.) Plaintiff worked for Defendants from October 3, 2018 through March 23, 2020, a period spanning 537 days. (Perry Aff. ¶ 3; Tr. at 15:17-19; 21:17-22:21; 23:19-24:3.) Although there was a break in employment of approximately four months, that period was about midway between the two periods of employment. Because Plaintiff was never paid overtime, the mid-point of her entire employment period, June 29, 2019, will be used to calculate prejudgment interest.

Plaintiff's overtime damages are $4,295.00. Prejudgment interest on those damages at a rate of nine percent is $386.55 per year. That amount divided by 365 days in a year results in daily interest

of $1.06. Accordingly, the undersigned respectfully recommends that Plaintiff be awarded prejudgment interest of $1.06 per day from June 29, 2019 through the entry of judgment.

### E. Post-Judgment Interest

Plaintiff also seeks post-judgment interest. (Dkt. 25 at 4.) 28 U.S.C. § 1961(a); *see e.g., Fermin*, 93 F. Supp. 3d at 53. Accordingly, the undersigned recommends that Plaintiff be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### F. Fifteen Percent Increase Penalty if Damages not Paid Within Ninety Days

Plaintiff does not seek an automatic increase of fifteen percent for any unpaid amount of the judgment still pending after ninety days, as provided for at NYLL § 198(4). However, that provision mandates that "any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4) (emphasis added); *see also Rodriguez v. Solares Corp.*, No. 16-CV-3922 (CBA)(SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), *R&R adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019). This award is therefore mandatory, regardless of whether Plaintiff requests it or not.

The increase applies only to damages awarded under state law. *See id.* (recommending that the fifteen-percent increase provided for under NYLL § 198(4) be limited to amounts "awarded exclusively under the NYLL"); *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20-CV-3003 (AMD), 2021 WL 2227977, at *13 (E.D.N.Y. May 11, 2021), *R&R adopted*, 2021 WL 2223275 (E.D.N.Y. June 2, 2021) (*citing Rodriguez* and limiting conditional fifteen percent enhancement to damages awarded under the NYLL). Accordingly, Plaintiff's damages under the NYLL should be increased by fifteen percent if Defendants fail to timely satisfy the judgment.

24

VI.    **Attorneys' Fees and Costs**

Prevailing plaintiffs are allowed to recover reasonable attorneys' fees and costs under both the FLSA and the NYLL.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).  Plaintiff requests $4,095.00 in fees and $764.25 in costs.[8]  (Mem. of Law at 16-17.)

A.    **Attorneys' Fees**

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request.  *Mahoney*, 2016 WL 6585810, at *18.  Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (quotation and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations and citation omitted).  "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (quotation and citation omitted).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of

---

[8] Plaintiff stated that she "seeks an award of costs of $615.24, which consists of $400 filing fee and $364.25 in process server fees." (Mem. of Law at 17.)  However, the undersigned has corrected the total amount of costs that Plaintiff is seeking to be $764.25.

hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 9-CV-451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)).  "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299 (citation omitted).

### 1. Hourly Rate

Plaintiff seeks fees for the work done by her counsel, Mohammed Gangat at a rate of $350 per hour.  Gangat is the attorney in charge of prosecuting this matter.  (Gangat Decl. ¶ 13; Mem. of Law at 16-17.)  Gangat graduated from Georgetown Law School in 2009 and has "extensive experience litigating unpaid wage actions on behalf of employees of New York state and federal court." (Gangat Decl. ¶ 14.)  He currently operates his own law office, but there is no indication of how long he has been practicing in this capacity.

Some courts in this district have held that the appropriate range for a senior attorney in a labor law case is $300 to $400 per hour, while others have found that $450 is the proper upper limit of the range.  See *Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR)(JO), 2020 WL 4783399, at *5 (E.D.N.Y. Aug. 18, 2020).  Although Gangat has extensive experience litigating employment actions, senior associates with a comparable level of experience are typically awarded $200 to $325 in this district. *See Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526 (CBA)(SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), *R&R adopted*, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (citing recent fee awards in FLSA cases of "$300 to $450 for partners, $200 to $325 for senior associates").

Accordingly, the undersigned finds that the reasonable rate for Gangat is $325.

### 2. Reasonableness of Time Billed

Plaintiff's counsel seeks reimbursement for 11.7 hours of work.  In support, he submitted time records showing that between May 13, 2020 and November 15, 2020, he billed a total of 11.7 hours, including for preparing and filing the Complaint and the First Motion.  (Gangat Decl. ¶ 13.)  He did not seek attorneys' fees for any work done subsequently, including for the Inquest on August 27, 2021

26

or for the Motion filed thereafter.  The undersigned has reviewed these records and finds the billed time to be reasonable.

### B.  Costs

Plaintiff seeks $764.25, which consists of a $400 filing fee and $364.25 in process server fees. (Mem. of Law at 17.)  The undersigned takes judicial notice of the filing fee.  *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).  Plaintiff submitted invoices to support the process server fees in the total amount of $364.25.  (Ex. J to Motion, Dkt. 28-13.)

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded **$764.25** in costs.

### VII.    Joint and Several Liability

When multiple defendants are found to be a plaintiff's employer, "each [d]efendant is jointly and severally liable under the FLSA and NYLL for any damages awards made in [that] [p]laintiff['s] favor."  *Fermin,* 93 F. Supp. 3d at 37; *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011) (holding that plaintiff's allegations that the individual defendant "was an owner, partner, or manager" of the corporate defendant, "coupled with [d]efendants' default, suffice to ... impose joint and several liability on each [defendant] for their respective violations of the wage laws." (quotation and citation omitted)).

Defendants High Level Development and Middleton were Plaintiff's joint employers for the entire time of her employment.  Accordingly, the undersigned respectfully recommends that High Level Development and Middleton be found jointly and severally liable for the damages awarded in this action.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Motion be granted. The undersigned respectfully recommends that damages be awarded as follows:

- $4,295.00 for unpaid overtime;

- $4,295.00 for liquidated damages for unpaid overtime;

- $5,000.00 for failure to provide wage notices;

- $5,000.00 for failure to provide wage statements;

- $63,525.00 for back pay for retaliation, plus $825 per week from September 14, 2021 to the date judgment is entered;

- $63,525.00 for liquidated damages for retaliation;

- $3,802.50 for attorney fees; and

- $764.25 for costs.

The undersigned further respectfully recommends that Plaintiff be granted prejudgment interest be awarded at the rate of $1.06 per day from June 29, 2019 through the entry of judgment, post-judgment interest at the statutory rate, and a fifteen-percent increase penalty if damages under the NYLL are not paid within ninety days of judgment or the expiration of time to appeal.

The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation on Defendants forthwith.  Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
_____
PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 16, 2022